664 F.2d 1163
 81-2 USTC P 9788
 UNITED STATES of America and Dimpsey L. Lovell, Special
Agent of the Internal Revenue Service, Plaintiffs-Appellees,
v.
Scott SCHOLBE, Operations Manager, Summit County Bank, Defendant,
Theodore DeLisi, Sr., Margaret DeLisi, Theodore DeLisi, Jr.,
and Richard DeLisi, Intervenors-Appellants.
 No. 80-1571.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Oct. 2, 1981.
Decided Nov. 27, 1981.
 
 Stanton D. Rosenbaum of Isaacson, Rosenbaum, Spiegleman & Friedman, Denver, Colo. (Judy D. Shapiro of Levey, Levenstein & Cowan, Miami, Fla., with him on the brief), for intervenors-appellants.
 William A. Whitledge, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup and Charles E. Brookhart, Joseph F. Dolan, U. S. Atty., Tax Div., Dept. of Justice, Washington, D.C., of counsel, with him on the brief), for plaintiffs-appellees.
 Before BARRETT and LOGAN, Circuit Judges, and KUNZIG, Judge*.
 LOGAN, Circuit Judge.
 Intervenors Theodore DeLisi, Sr., Margaret DeLisi, Theodore DeLisi, Jr., and Richard DeLisi (the DeLisis) appeal from a district court order enforcing a summons the Internal Revenue Service (IRS or Service) issued to obtain their bank records. The case reaches us in an unusual posture: Both appellants and appellees agree that the trial court applied the incorrect standard of law, and on appeal the parties prevailing below argue that the trial court's factual findings were clearly erroneous.
 Early in 1978 the IRS began formally investigating whether the DeLisis had been correctly reporting their incomes. Shortly thereafter, the Drug Enforcement Administration (DEA) of the Department of Justice informed the IRS that some of the DeLisis were suspected "Class I" (or "High Level") drug traffickers. The DEA also gave other information to the agent in charge of the IRS investigation. The IRS subsequently issued over twenty summonses to third-party recordkeepers, but the DeLisis intervened and stayed compliance, as they are authorized to do. See I.R.C. § 7609(b). In August 1978 the IRS agent in charge of the investigation, believing the investigation was not progressing, urged that the case be referred to the Department of Justice for a grand jury investigation. The IRS asked the Justice Department not to proceed with actions to enforce the summonses until the IRS determined whether it would transfer the case to the Justice Department. The parties dispute whether the IRS ever recommended criminal prosecution to the Justice Department, but the record shows that shortly after urging that the case be referred, the IRS agent rescinded his request for grand jury assistance. The IRS agent then served on a Colorado bank the summons that is before us. When the DeLisis again intervened and stayed compliance, the IRS commenced the instant action to enforce the summons. Over the next year, the district court held four evidentiary hearings on the propriety of the summons and finally ordered the summons enforced. This appeal followed.
 We recently summarized the requirements for a valid IRS summons in United States v. Security Bank & Trust Co., 661 F.2d 847 (10th Cir. 1981). As established by the Supreme Court, the IRS must issue the summons in good faith and prior to recommending to the Justice Department that the taxpayers be criminally prosecuted for tax fraud. United States v. LaSalle National Bank, 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978); Donaldson v. United States, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971). LaSalle clarified that in determining whether a recommendation had been made, the focus should be upon whether the IRS as an institution had decided to recommend criminal prosecution, not whether the recommendation had been made only at a lower level within the Service. LaSalle, 437 U.S. at 311-16, 98 S.Ct. at 2364-67. After reaching an institutional decision to recommend criminal prosecution, the IRS may not circumvent this restriction by delaying transmission of its recommendation solely to gather additional evidence for the prosecution. Id. at 316-17, 98 S.Ct. at 2367-68. To meet the good-faith standard, the IRS "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed ...." United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The Service acts in bad faith if it issues the summons "to pressure the taxpayer to settle a collateral dispute, to harass the taxpayer, or to allow the Service to fulfill a commitment to gather information for other law enforcement agencies."[1] Security Bank, 661 F.2d at 850 (citations to Powell and LaSalle omitted).
 In determining the propriety of the DeLisi summons, the district court judge found that the IRS had recommended to the Justice Department that the DeLisis be criminally prosecuted for tax fraud. The trial court then wrestled with language from an earlier opinion of this Circuit that erroneously referred to the recommendation "of" the Justice Department. United States v. MacKay, 608 F.2d 830, 833 (10th Cir. 1979). The trial court found that when the IRS recommended criminal prosecution the Justice Department declined to accept the case, and therefore there was no recommendation of the Justice Department for criminal prosecution. Because the IRS issued its summons before a recommendation of the Justice Department, the trial court reasoned that the IRS issued the summons in good faith and ordered it enforced.
 However, as both parties conceded in open court and in their briefs, MacKay's use of the word "of" was an inadvertent error-it should have read, recommendation to the Justice Department. Therefore, the trial court applied the incorrect rule of law. While they prevailed at the enforcement proceeding, the IRS and its Agent Lovell now argue that the court's finding that the IRS had recommended criminal prosecution was clearly erroneous. The DeLisis, who lost, argue that substantial evidence supported the court's findings.
 On appeal we will not disturb factual findings unless they were clearly erroneous. The trial court found that both the evidence introduced into the public record and the evidence the court examined in its in camera inspection of the IRS file (some 2000 documents) showed that the IRS had recommended criminal prosecution. Based upon a careful review of the record and inspection of the in camera documents, we have concluded the trial court's finding was clearly erroneous.
 The trial court did not recite the evidence it relied upon for its finding of an IRS recommendation to the Justice Department except that it was "(n)ot only on (the documents examined in camera ) but on the record made in open court." R. IV, 48. The only public record evidence the trial court could have been referring to was the IRS agent's short-lived request for a grand jury, although the court suggested it was not referring to the grand jury request. R. VI, 47. According to the record and the in camera documents, the only allusion to a discussion with any Department of Justice official was made by Steedley Young, the attorney in the Miami District Counsel's office. Young testified that he believed Conley E. Lemons, the IRS agent in charge of the investigation, asked either an assistant United States attorney or a Department of Justice attorney, or both, whether a grand jury could be used. R. V, 190, 192-93. Further, Young testified that he believed the Department of Justice told Lemons it did not want the case at that time because there was not enough information to warrant use of a grand jury investigation. R. V, 190-93.
 
 
 1
 Lemons testified, however, that he never spoke with anyone outside the IRS. R. V, 228, 232. The pertinent in camera documents suggest the IRS never offered the case to the Department of Justice. The documents can be summarized as follows: On September 26, 1978, frustrated by the DeLisis' blockage of their subpoenas, the IRS agents and their group manager proposed the case be sent to the Justice Department for convening of an investigatory grand jury. The file memorandum of that conference suggests the IRS agents wanted to use a grand jury to gather information for the IRS's own investigation, not necessarily for a criminal prosecution.[2] A memorandum to file dated October 4, 1978, states that the branch chief would soon engage in preliminary discussions of an anticipated request for a grand jury and that the IRS agents would begin formulating a written request for a grand jury in the investigation of the DeLisis. The last relevant document, Lemons's memorandum of November 6, 1978, informs the IRS District Counsel that the Criminal Investigation Division is no longer pursuing any request for grand jury assistance in the DeLisi investigation.
 
 
 2
 As previously noted, LaSalle teaches that the focus should be upon the IRS's institutional posture. Without deciding whether the IRS can ever utilize a grand jury investigation while still retaining its civil summons power, we think it clear the request never progressed to the level of an IRS institutional commitment to seek a grand jury investigation. Although the trial court did not so indicate, perhaps it found Young's testimony regarding Lemons's actions more persuasive than Lemons's own testimony. But even if the trial court believed that Lemons asked the Department of Justice whether a grand jury could be summoned, this inquiry does not constitute an institutional recommendation for criminal prosecution or commitment to make that recommendation at a future date. Viewed in the light most favorable to the DeLisis, the testimony and internal IRS memoranda examined in camera do not constitute substantial evidence to support a conclusion that the IRS took the additional steps, beyond the agent's inquiry, needed to reach the level of an institutional commitment or recommendation; the evidence strongly suggests the contrary, that no institutional commitment was ever reached.[3]
 
 
 3
 LaSalle notes that the district chief and the Office of Regional Counsel must approve the agent's recommendation before a case can be forwarded to the Justice Department. LaSalle, 437 U.S. at 315, 98 S.Ct. at 2366. That procedure has been changed; at present, the Office of the District Counsel, rather than the Regional Counsel, must approve the recommendation before forwarding the case to the Justice Department. Internal Revenue Manual, ch. 9600, §§ 9624, 9631.2, 9631.4. Lemons, the agent in charge of the investigation, testified that he never initiated a recommendation for criminal prosecution. R. III, 25. Young, an attorney in the District Counsel's office, testified that if a recommendation had ever reached that level, he would have received it, and that neither he nor, to his knowledge, anyone else in his office had ever received a recommendation for criminal prosecution. R. IV, 38. Lemons testified that because the DeLisis blocked every third-party recordkeeper summons, the IRS investigation never progressed sufficiently to permit a determination of civil or criminal liability. Because our review uncovers no evidence of an IRS recommendation of criminal prosecution or commitment to make such a recommendation, this ground provides no basis for refusing to enforce the IRS summons.
 
 
 4
 The trial court also found that the government was committed to prosecuting the DeLisis for nontax offenses. Presumably the court was referring to a DEA commitment to prosecute for drug offenses if it could secure sufficient evidence. The court apparently concluded that the IRS agreed to exchange information with the DEA, and posed the question whether this agreement had reached the line mentioned in LaSalle that "the good-faith standard will not permit the IRS to become an information-gathering agency for other departments ...." R. IV, 45.
 
 
 5
 We have reviewed the pertinent in camera documents. The documents reveal that during the period before the IRS issued the instant summons, the Assistant Attorney General, Criminal Division, formally requested IRS information on members of the DeLisi family as part of a broad plan to crack down on drug traffickers. Considered as a whole, the documents support the inference we believe the trial judge made: that the IRS agreed, either on an ongoing basis or with the expectation of regular DEA requests, to provide DEA authorities with information the IRS secured pursuant to its tax investigation. Although the IRS agreed to provide only materials it was permitted to share pursuant to I.R.C. § 6103, that could include information that the IRS might obtain through exercise of its subpoena powers.[4] IRS agents were told that before releasing such information, they should clear the release with an IRS Disclosure Officer. We must determine, therefore, whether this plan to provide information barred IRS use of its summons power.
 
 
 6
 Can we reconcile the right to disclose information under I.R.C. § 6103(i)(2) with the admonition in LaSalle that the IRS may not become an "information-gathering agency for other departments"? We must also consider that the IRS routinely participates in multiagency strike force activities, and Congress has never prohibited such participation. To our knowledge, only one decision has previously addressed the strike force issue. That Second Circuit opinion expressed concern about the practice, but upheld the IRS's use of the summons power while it was participating in a strike force. United States v. Chemical Bank, 593 F.2d 451, 456-59 (2d Cir. 1979). In part, it justified its conclusion by the following analysis:
 
 
 7
 "LaSalle recognized that the process of examination leading toward civil or criminal liability was not separable and could produce interaction between departments of Government. The only caveat related to the likelihood of subterfuge if Justice fraudulently used the IRS only for the purpose of ferreting out information it could not otherwise obtain without an open disclosure of its interest in something other than civil tax liability. The critical fact here is that the IRS is not institutionally subservient to the Department of Justice when the two participate in a Strike Force. Nor is the IRS on the scene simply to service Justice. While revenue agents are assigned to work cooperatively with the Strike Force, they remain under the control of their own superiors in the Service."
 
 
 8
 593 F.2d at 456 (emphasis in original).
 
 
 9
 We think this is a most difficult case under the LaSalle dictum. However, in LaSalle the Supreme Court expressly noted that an IRS investigation normally has both criminal and civil aspects and recognized the IRS practice of assigning both special agents and revenue agents to tax fraud investigations. 437 U.S. at 309 n.12, 98 S.Ct. at 2363 n.12. It prohibited use of the subpoena power if the IRS was institutionally committed to make a referral for criminal prosecution but delayed referral "merely" to gather additional evidence. Id. at 317, 98 S.Ct. at 2368. We think the statement that the "good-faith standard will not permit the IRS to become an information-gathering agency for other departments," id., must be read in the context of the Court's emphasis on the institutional posture of the IRS. If the IRS is still actively conducting a bona fide investigation of the taxpayer's civil liability and confines its sharing to the limits of I.R.C. § 6103, then it will retain its power to issue subpoenas.
 
 
 10
 Nothing in the record or our review of the in camera documents suggests that when the IRS issued the summons on the Colorado bank, it was no longer actively pursuing its civil tax investigation or intended to violate the guidelines of I.R.C. § 6103. We find no reason, on the basis of a commitment to serve as an information-gathering agency, to refuse to enforce the IRS summons.
 
 
 11
 Finally, the government argues that the discovery permitted in this enforcement action was much too broad. In view of our disposition of the case we need not treat this issue. In future cases the trial court will have the benefit of the guidelines set out in our recent Security Bank decision.
 
 
 12
 Although our reasoning significantly differs from that of the district court, its decision to enforce the summons was correct, and is hereby AFFIRMED.
 
 
 
 *
 Honorable Robert L. Kunzig of the United States Court of Claims, sitting by designation
 
 
 [1]
 As Security Bank observed, at 850 n.4, the Supreme Court in LaSalle stated that other types of abuse may be found in the future
 
 
 [2]
 The memorandum refers to a discussion of using a grand jury to help in obtaining records and testimony from reluctant and hostile witnesses that the IRS was not securing through their outstanding summons. The memorandum states that further inquiry was to be made
 
 
 [3]
 Nothing in the public record or in camera materials indicates that the case ever reached the Department of Justice. For this reason, we need not decide under what circumstances, if any, the IRS can regain the summons power after the Department of Justice has chosen not to accept the case for criminal prosecution
 
 
 [4]
 However, because the DeLisis had blocked each summons the IRS had issued, as of the time the IRS pursued this enforcement action, it had not given the DEA any information it had secured through use of its summons power