769 F.2d 1440
 56 A.F.T.R.2d 85-5662, 54 USLW 2107, 85-2
USTC P 9584
 UNITED STATES of America and William F. Conlon, Revenue
Agent Internal Revenue Service, Appellees,
v.
BALANCED FINANCIAL MANAGEMENT, INC. and Kelley W. Crider,
Appellants.
UNITED STATES of America and William F. Conlon, Revenue
Agent, Internal Revenue Service, Appellants,
v.
BALANCED FINANCIAL MANAGEMENT, INC. and Kelley W. Crider, Appellees.
 Nos. 84-2210, 84-2405 and 85-1238.
 United States Court of Appeals,
Tenth Circuit.
 July 30, 1985.
 
 Frank C. Hider, Jr., Frank C. Hider, Jr., P.C., Dallas, Tex. (John D. Moats, Zisman and Moats, P.C., Denver, Colo., was also on briefs), for appellants/appellees Balanced Financial Management, Inc. and Kelley W. Crider.
 Farley Katz, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, and Gary D. Gray, Attys., Tax Div., Dept. of Justice, Washington, D.C., and Robert N. Miller, U.S. Atty., Denver, Colo., were also on briefs), for appellees/appellants, U.S. and William F. Conlon.
 Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and BOHANON, District Judge*.
 HOLLOWAY, Chief Judge.
 
 
 1
 In Nos. 84-2210 and 84-2405, Balanced Financial Management, Inc. (BFM) and Kelley W. Crider appeal from an order of the district court directing them to obey an Internal Revenue Service administrative summons and denying their motion to enjoin further government investigations or collection of taxes and from an order denying their Federal Rules of Civil Procedure, Rule 60(b) motion. In No. 85-1238, the Government appeals from an order granting taxpayers' motion to dismiss a petition to show cause why the taxpayers should not be held in contempt, granting taxpayers' application for stay of enforcement of the district court's order directing taxpayers to obey the IRS administrative summons pending the appeal of the enforcement order in No. 84-2210, and directing the Government to pay $12,781.74 in attorneys' fees and costs incurred by the taxpayers in the contempt proceeding.
 
 
 2
 * BFM is a financial planning organization which promotes investments in Jarelco, Inc. Jarelco owns master audio tape recordings and original art work relating to children's entertainment. BFM is an Arizona corporation with its principal business headquarters in Salt Lake City, Utah, and Jarelco is a Texas corporation with principal business headquarters in Dallas, Texas. The IRS began an investigation of BFM to determine "whether BFM is liable for any internal revenue tax including, but not limited to, the liability of BFM for the abusive tax shelter promoter penalty of 26 U.S.C. Sec. 6700 and whether the Internal Revenue Service should seek an injunction against BFM pursuant to 26 U.S.C. Sec. 7408." I R. 2.
 
 
 3
 On January 10, 1984, the IRS issued an administrative summons to taxpayers directing them to appear on January 20, 1984, before Revenue Agent William F. Conlon at the BFM offices in Arvada, Colorado, to testify and to produce for examination the documents and information described in the summons. Id. at 5. The taxpayers failed to appear in response to the summons. Id. at 3. On April 17, 1984, the Government filed a petition to enforce the summons in district court. Id. at 1.
 
 
 4
 On June 11, 1984, the taxpayers moved for a continuance of the summary enforcement hearing to give them time for discovery prior to an evidentiary hearing. The district court found that "[t]he government's actions comply with the requisite procedures and are neither duplicative nor harassing. The fact that BFM has operations in both Denver and Salt Lake City does not make the government's actions improper when it seeks information from both offices." Id. at 142. The district court also found that "BFM's allegations are insufficient to justify the order of an injunction pursuant to 26 U.S.C. Sec. 7408 restraining further government investigations or collection of taxes." Id. The district court denied the motion for an injunction and ordered taxpayers to obey the government's summons. Id. The taxpayers appealed from this order in No. 84-2210. Id. at 160.
 
 
 5
 The taxpayers filed a motion under Rule 60(b)(1) of the Federal Rules of Civil Procedure and for an order granting limited discovery before deciding whether to require them to comply with the IRS summons. The district court denied this motion. Id. at 145. The taxpayers also appealed from this order in No. 84-2405. Supp. I R. 12.
 
 
 6
 On November 27, 1984, the Government filed a petition for an order to show cause why BFM and Crider should not be held in contempt. Supp. II R. 1. The district court set December 14, 1984, as the date on which taxpayers were to appear and show cause. Id. at 14. On December 10, 1984, taxpayers filed an application for protective stay of the court's enforcement order pending appeal. Id. at 21.
 
 
 7
 Taxpayers appeared at the show cause hearing on December 14, 1984, through their counsel but counsel for the Government failed to appear. Id. at 50. At that hearing the district court orally granted taxpayers' motion to dismiss for failure by the Government to properly prosecute. The court also granted the application for a protective stay of the court's enforcement order pending appeal and the taxpayers' motion for attorney's fees and costs incurred in the contempt proceeding in the amount of $12,781.74. Id. at 51-53. On January 2, 1985, the district court granted to taxpayers attorney's fees and costs in the amount of $12,781.74. Id. at 53. The Government filed a motion to alter, amend, or reconsider this order which was denied. Id. at 55, 76. The Government appealed from the January 2 order in No. 85-1238. Id. at 77.
 
 II
 
 8
 The Government's prima facie case and the taxpayer's burden
 
 
 9
 in meeting it
 
 
 10
 The Government sought to enforce the IRS administrative summons issued to taxpayers on January 10, 1984, pursuant to the provisions of 26 U.S.C. Sec. 7402(b) (1982) and 26 U.S.C. Sec. 7604(a) (1982). To enforce the summons the Commissioner of Internal Revenue must meet the standards set out in United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). He must show
 
 
 11
 that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed....
 
 
 12
 Id. at 57-58, 85 S.Ct. at 254-255.
 
 
 13
 The burden is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted. United States v. Kis, 658 F.2d 526, 536 (7th Cir.1981), cert. denied, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). "The requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement." United States v. Garden State National Bank, 607 F.2d 61, 68 (3d Cir.1979); see also Kis, 658 F.2d at 537.[1] We believe that the Government made its Powell prima facie showing here and reject the taxpayers' contentions to the contrary, as we explain below.
 
 
 14
 The burden then shifts to the taxpayers. The burden is a heavy one. Garden State National Bank, 607 F.2d at 68.
 
 
 15
 The taxpayer must "establish any defenses or ... prove that enforcement would constitute an abuse of the court's process." United States v. Genser, 582 F.2d 292, 302 (3d Cir.1978) (Genser I ). He must "prove a lack of good faith, that the government has abandoned in the institutional sense its pursuit of possible civil penalties." United States v. Moll, 602 F.2d 134, 138 (7th Cir.1979). The taxpayer must do more than just produce evidence that would call into question the Government's prima facie case. The burden of proof in these contested areas rests squarely on the taxpayer. As the Third Circuit observed, "[U.S. v. ] LaSalle [National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) ] may not have closed the door in the taxpayer's face, but neither did it leave much more than a very slight opening." United States v. Garden State National Bank, 607 F.2d 61, 70 (3d Cir.1979).
 
 
 16
 Kis, 658 F.2d at 538-39. (footnote omitted).
 
 
 17
 "In responding to the Government's showing, it is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice." Garden State National Bank, 607 F.2d at 71. (citation omitted). "Allegations supporting a 'bad faith' defense are ... insufficient if conclusionary." Id. "[I]f at this stage the taxpayer cannot refute the government's prima facie Powell showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." Id.[2] We agree with these requirements and will apply them. See United States v. Scholbe, 664 F.2d 1163 (10th Cir.1981); United States v. Security Bank and Trust Company, 661 F.2d 847, 851 (10th Cir.1981); United States v. Traynor, 611 F.2d 809, 810 (10th Cir.1979). Unless these requirements are met, an evidentiary hearing "would be a waste of judicial time and resources." Kis, 658 F.2d at 540. (footnote omitted). It is only where material Government allegations
 
 
 18
 are factually refuted by the taxpayer, thus presenting a disputed factual issue, or where proper affirmative defenses, such as those alleging "bad faith" under the tests of LaSalle and Genser II, are factually supported by the taxpayer's affidavits, the taxpayer is entitled to an evidentiary hearing. [U.S. v.] McCarthy, 514 F.2d at 368 [3rd Cir.1975].
 
 
 19
 Garden State National Bank, 607 F.2d at 71.
 
 III
 
 20
 The Taxpayers' objections to enforcement of the summons
 
 
 21
 On appeal, the taxpayers here argue that the district court's finding that the summons should be enforced should be reversed, or at the least, that taxpayers are entitled to limited discovery and an evidentiary hearing before the district court makes a finding. To support their argument, taxpayers attempt to refute the Government's prima facie Powell showing and support a proper affirmative defense. Taxpayers contend (1) that the district court erred in not permitting limited discovery; (2) that conducting examinations in both Colorado and Utah was duplicative and unnecessary; (3) that unauthorized disclosures made by the IRS about BFM are equivalent to bad faith; (4) that the IRS failed to comply with the John Doe provision of 26 U.S.C. Sec. 7609(f); and (5) that the IRS waived its right to compel compliance with the summons.
 
 
 22
 First, taxpayers seek limited discovery of "the circumstances of the issuance of the summons and its legitimacy as of the date of its issuance." I R. 79. Taxpayers seek "to determine what secret internal guidelines may have been published and communicated to the Denver District applicable to examination of Respondents under Rev.Proc. 83-78." Id. at 80. They also seek discovery "in order to further determine from suspected agents of IRS whether they engaged in any unauthorized disclosures of tax return information with respect to BFM." Id. Further, taxpayers want discovery "in order to determine whether the IRS has an illegitimate purpose behind the summons at issue and to firmly establish that the Denver IRS examination of BFM is a duplicative and unnecessary examination for the purpose of harassment of BFM and its agents for the purpose of ruining its business in Colorado." Id.
 
 
 23
 We have stated that "[a]s a general rule, discovery is available in summons enforcement proceedings only in extraordinary situations." United States v. Southern Tanks, Inc., 619 F.2d 54, 56 (10th Cir.1980) (per curiam). In United States v. Security Bank and Trust Co., 661 F.2d 847, 850 (10th Cir.1981), we listed those defenses where limited discovery is necessary because "the taxpayer must rely on information peculiarly within the knowledge or files of the Service." On the other hand, we noted that "[c]ertain taxpayer defenses may not require the use of discovery" because, for example, "the information sought is not relevant to a tax investigation, is already in the hands of the IRS, or is sought to coerce or harass the taxpayer." Id. We believe that the allegations of defenses by taxpayers here do not require discovery.
 
 
 24
 Because " 'the burden of showing an abuse of the Court's process is on the taxpayer,' it is ... clear that the taxpayer must make a substantial preliminary showing before even limited discovery need be ordered." United States v. Morgan Guaranty Trust Co., 572 F.2d 36, 42-43 n. 9 (2d Cir.), cert. denied, 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). Instead, the taxpayers here made unspecified and unsupported demands for information about "secret internal guidelines" and "whether the IRS has an illegitimate purpose behind the summons." The taxpayers did not make a substantial preliminary showing of an abuse of the court's process. Since the taxpayers did not make a substantial preliminary showing of an abuse of the court's process or make sufficient allegations of defenses that require discovery, the district court did not err in denying discovery.
 
 
 25
 Second, the taxpayers state that Revenue Procedure 83-78 is being administered in an arbitrary, inflexible and unreasonable manner resulting in harassment of the taxpayers and duplicative, unnecessary investigations. They say that Revenue Procedure 83-78 does not authorize the IRS to conduct the same investigation of a promoter who operates in several states, as does BFM, in each IRS district in which it operates, but rather the investigation must be centralized--here in Utah, the location of BFM's principal place of business.
 
 Revenue Procedure 83-78 provides that
 
 26
 [i]n order to identify and investigate abusive tax shelter promotions, each district will designate a coordinator(s) to be responsible for gathering information on promotions being marketed. Tax shelter promotions will be identified from the following:
 
 
 27
 (a) federal, state, and local information agencies;
 
 
 28
 (b) other IRS investigations; and
 
 
 29
 (c) magazines and newspapers and any other information available.
 
 
 30
 Rev.Proc. 83-78, 1983-2 C.B. 596. A committee is to be established in each district to "review the information submitted by the coordinator and select those promotions in which the promoter penalty, pre-filing notification and/or injunction action may be applicable." Id.
 
 
 31
 Once a particular promotion has been selected by the Committee a revenue agent will be assigned to the case to determine:
 
 
 32
 1) whether the promoter penalty in section 6700 of the Code is applicable;
 
 
 33
 2) whether there is a basis for concluding that the investors will not be in compliance with the tax law if they claim the tax benefits represented by the promoter to be available; and
 
 
 34
 3) whether injunctive relief under section 7408 of the Code should be sought.
 
 Id.[3]
 
 35
 Due to provision in Rev.Proc. 83-78 for the identification and investigation of abusive tax shelter promotions by each district, promotions being marketed in several districts might be investigated in several districts. Rev.Proc. 83-78 certainly does not prohibit this nor does it require the centralization of investigation of a tax shelter promotion which operates in several districts. Congress intended to provide the Secretary of the Treasury, and the IRS as his designate, "with broad latitude to adopt enforcement techniques helpful in the performance of tax collection and assessment responsibilities"; this intent is expressed throughout the Internal Revenue Code. United States v. Euge, 444 U.S. 707, 716 n. 9, 100 S.Ct. 874, 880 n. 9, 63 L.Ed.2d 141 (1980).
 
 
 36
 In a related argument the taxpayers contend that the IRS summons should not be enforced because it is being used in a duplicative, unnecessary examination of the same taxpayer for identical purposes and therefore is a simultaneous second examination prohibited by 26 U.S.C. Sec. 7605(b).[4]
 
 
 37
 In Powell, Senator Penrose, the manager of the bill in which Sec. 7605(b) first appeared, is quoted as saying that the purpose of Sec. 7605(b) is to prevent "unnecessary visits and inquisitions [by tax examiners] after a thorough examination is supposed to have been had." Powell, 379 U.S. at 54, 85 S.Ct. at 253. "[T]he standard is whether the examination or investigation sought by the IRS is unnecessarily duplicative of some prior examination." United States v. Davey, 543 F.2d 996, 1000 (2d Cir.1976); see also Hinchcliff v. Clarke, 371 F.2d 697, 700 (6th Cir.), cert. denied, 387 U.S. 941, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967). Section 7605(b) is not applicable here because the examinations of BFM in each of the districts are being conducted concurrently.
 
 
 38
 Taxpayers further contend that many of the records sought by the summons are not relevant to a proper investigation and are already in the possession of the IRS. In his affidavit Revenue Agent Conlon states that he is "conducting an examination for the purpose of determining whether Balanced Financial Management, Inc., is liable for any internal revenue tax or has committed any offense connected with the administration or enforcement of the internal revenue laws including, but not limited to, penalties per IRC Section 6700 and/or injunction per IRC Section 7408." I R. 12. The Government's showing is sufficient that the records sought by the summons are relevant to the investigation. Moreover, the Government stated that "if any of the alleged overlapping materials were turned over to the Internal Revenue Service pursuant to one of these summonses [the summons issued in Utah and the summons issued in Colorado], the other summons could not be enforced to the extent of the materials already in the possession of the Internal Revenue Service and the Internal Revenue Service would not seek enforcement of the summons to that extent." I R. 100-01.
 
 
 39
 Third, the taxpayers say that the unauthorized disclosures are equivalent to bad faith.[5] Taxpayers attach to their motion for relief from order and for limited discovery the affidavits of Glen Thompson and Phil Kirby, independent sales agents for BFM. Thompson stated that he was discussing BFM's leasing program with a Denver couple and
 
 
 40
 [o]n May 9, 1984, the husband stated to me that his sister-in-law, who either was currently working or had previously worked for the Internal Revenue Service in Denver, Colorado, had contacted an Internal Revenue Service attorney in the Denver office between April 16, 1984 and May 9, 1984, to see what she could learn about Balanced Financial Management, Inc.'s investment program. During the course of that discussion, the I.R.S. lawyer told the sister-in-law Balanced Financial Management, Inc.'s leasing program was "probably illegal."
 
 
 41
 I R. 150. The couple refused to provide their own affidavit or the sister-in-law's name and cancelled plans to further discuss investment in BFM. Id. at 151. Phil Kirby stated that he was discussing BFM's leasing program with a Denver couple and during the discussion
 
 
 42
 the wife stated to my manager, Kelley Crider, that she had asked one of her friends, an employee of the Internal Revenue Service in Denver, to find out through the Internal Revenue Service what the friend could about Balanced Financial Management, Inc. The unidentified friend reported back to the wife the fact that the Internal Revenue Service had an ongoing investigation of Balanced Financial Management, Inc.
 
 
 43
 Id. at 153. Following this disclosure the couple decided not to invest in BFM's program. Kirby also stated that
 
 
 44
 [d]uring July of 1984, I again discussed the foregoing with the husband who reconfirmed the events as I have described herein, however, he and his wife desire not to provide their own affidavits or to otherwise become involved at this time. During July 1984, the husband told me that the Internal Revenue Service said that some of these kinds of investment opportunities which companies, such as Balanced Financial Management, Inc. are involved in, are what are under investigation.
 
 
 45
 Id.
 
 
 46
 The taxpayers present only second-hand information offered through the affidavits of BFM's independent sales agents of alleged unauthorized disclosures. Even if taxpayers had presented direct affidavits by persons having personal knowledge of these disclosures, we do not believe that this evidence would indicate that an abuse of the court's process had occurred as defined by Powell. 379 U.S. at 58, 85 S.Ct. at 255.[6] Here, the alleged IRS disclosures, made after contacts with the IRS initiated by others, are not such an abuse as to invalidate the entire enforcement proceeding; less extreme remedies than denial of enforcement should be sufficient. See 26 U.S.C. Sec. 7213(a)(2) (criminal sanctions against federal employees for unauthorized disclosures); 26 U.S.C. Sec. 7431 (civil damages allowed in actions against Government for unauthorized disclosures). Such evidence does not reflect on the good faith of the investigation itself. Id.[7]
 
 
 47
 Fourth, the taxpayers contend that the IRS failed to comply with the John Doe provision of 26 U.S.C. Sec. 7609(f) in its attempt to obtain records and identities of independent third-party clients and agents for audit purposes.[8] "Under Sec. 7609(f), the IRS cannot serve a summons seeking information on the tax liabilities of unnamed taxpayers without obtaining prior judicial approval at an ex parte proceeding." Tiffany Fine Arts, Inc. v. United States, --- U.S. ----, 105 S.Ct. 725, 83 L.Ed.2d 678 (1985).
 
 
 48
 However, as the Supreme Court held in Tiffany, "where the summoned party is itself being investigated, that party's self-interest provides sufficient protection against the evils that Congress sought to remedy when it enacted Sec. 7609(f)." Id. --- U.S. ----, 105 S.Ct. 732. "[W]here, pursuant to Sec. 7602, the IRS serves a summons on a known taxpayer with the dual purpose of investigating both the tax liability of that taxpayer and the tax liabilities of unnamed parties, it need not comply with the requirements for John Doe summonses set out in Sec. 7609(f), as long as all the information sought is relevant to a legitimate investigation of the summoned taxpayer." Id. We conclude that the information sought by the IRS is relevant to a legitimate investigation of BFM. Therefore, the IRS did not need to comply with the requirements for John Doe summonses set out in Sec. 7609(f).
 
 
 49
 Fifth, the taxpayers say that the IRS waived its right to compel compliance with the summons by agreeing to change the original compliance date but thereafter failing to take the required administrative step of establishing or notifying taxpayers of a new date certain for compliance. In his affidavit Mr. Hider, the taxpayers' attorney, stated that BFM would not respond to the summons until BFM received a written response to BFM's letter of January 11, 1984, from the Regional Commissioners in which BFM requested centralization. I R. 66. "Revenue Agent Conlon stated that that was agreeable."[9] Id.
 
 
 50
 Even assuming that the IRS agreed to change the original compliance date until the response requested was received, by letter dated January 23, 1984, received by Mr. Hider on January 30, 1984, the Regional Commissioner of the Southwest Region did respond, advising taxpayers that "a sufficient basis exists for each district to proceed with their respective investigations." Id. Because BFM received a written response to its letter of January 11, 1984, BFM could no longer refuse to comply with the summons and no waiver on the theory advanced barred enforcement in any event.
 
 
 51
 In sum, summons enforcement proceedings "are intended to be summary in nature." Kis, 658 F.2d at 535. "The sole reason for the proceedings ... is to ensure that the IRS has issued the summons for proper investigatory purposes under section 7602 and not for some illegitimate purpose...." Id. Here, the taxpayers did not meet their heavy burden of refuting the Government's prima facie Powell showing or of factually supporting a proper affirmative defense. Therefore, the district court properly disposed of the proceeding on the papers before it without an evidentiary hearing. Garden State National Bank, 607 F.2d at 71. We affirm the enforcement order.[10]
 
 IV
 The Government's appeal
 
 52
 The Government appeals from the order of December 31, 1984, dismissing the petition to show cause, granting stay of enforcement of the July 7, 1984 order pending appeal, and granting taxpayers' attorneys' fees and costs against the Government incurred in the contempt proceeding in the amount of $12,781.74.
 
 
 53
 The district court orally granted taxpayers' motions at the December 14, 1984 hearing "in the absence of any appearance or objection by" the Government. Supp. II R. 51.[11] Hence, the dismissal of the contempt proceeding was entered because the Government failed to properly prosecute its petition to show cause. Citing Rule 55(e), Fed.R.Civ.P., the Government contends that the district court erred in dismissing the contempt proceeding and in staying its enforcement order pending the outcome of taxpayers' appeal but that "[t]he disposition of those appeals ... will render review of these errors moot."
 
 
 54
 Rule 55(e) deals with the entry of default judgments against the United States. However, no default judgment was actually entered against the United States and Rule 55(e) is not applicable. We conclude instead that the district court did not abuse its discretion in dismissing the contempt proceeding in view of the Government's failure to prosecute its petition to show cause. Rule 41(b), Federal Rules of Civil Procedure; see United States v. Berney, 713 F.2d 568, 571 (10th Cir.1983). Furthermore, we find no error in the stay of the enforcement proceedings, pending the appeals in Nos. 84-2210 and 84-2405.
 
 
 55
 With regard to the granting of taxpayers' attorneys' fees and costs against the Government, the district court found that "the petitioners commencement of this proceeding by filing a petition to enforce the summons through a contempt order together with petitioners failure to properly prosecute such petition was unreasonable. Further, respondents have met the requirement that respondents exhaust all administrative remedies available to them within the Internal Revenue Service as there are no administrative remedies in a suit brought by the government to enforce an Internal Revenue Summons...." Supp. II R. 52. However, the Government contends that it prevailed with respect to the most significant issue in this proceeding and that its position was not unreasonable.
 
 
 56
 Title 26 U.S.C. Sec. 7430 permits the award of reasonable litigation costs against the Government to the prevailing party in civil tax cases commenced after February 28, 1983. The term "reasonable litigation costs" includes "reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding." 26 U.S.C. Sec. 7430(c)(1)(A)(iv). The term "prevailing party" means
 
 
 57
 any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which--
 
 
 58
 (i) establishes that the position of the United States in the civil proceeding was unreasonable, and
 
 
 59
 (ii)(I) has substantially prevailed with respect to the amount in controversy, or
 
 
 60
 (II) has substantially prevailed with respect to the most significant issue or set of issues presented.
 
 
 61
 26 U.S.C. Sec. 7430(c)(2)(A).
 
 
 62
 We do not believe that the position of the Government in the underlying civil contempt proceeding was unreasonable. For this purpose, the position of the United States means the arguments relied upon by the Government in litigation. See United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1487 (10th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). The district court had ordered that the taxpayers "shall obey the government's summons." I R. 142. The taxpayers failed to comply with the summons or the court's order. Supp. II R. 3-4. The Government then sought an order directing taxpayers "to appear before the Court with the summoned records to show cause, if any, why they should not be held in contempt" of the district court's order. Id. at 2. That the Government's attorney failed to appear at the contempt hearing does not render the institution of contempt proceedings or the Government's position in that underlying contempt proceeding unreasonable.[12] Therefore, the district court erred in assessing attorneys' fees against the Government under 26 U.S.C. Sec. 7430.
 
 III
 
 63
 We accordingly affirm the order for enforcement of the administrative summons, affirm the dismissal of the contempt proceeding for failure to prosecute, and affirm the stay of enforcement proceedings pending the appeals. We reverse the award of $12,781.74 in attorneys' fees and costs.
 
 
 64
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable Luther L. Bohanon, United States District Judge for the Eastern, Northern and Western Districts of Oklahoma, sitting by designation
 
 
 [1]
 The Government met its burden by providing the affidavit of Revenue Agent William F. Conlon. In his affidavit Revenue Agent Conlon stated that he was "conducting an examination for the purpose of determining whether Balanced Financial Management, Inc., is liable for any internal revenue tax or has committed any offense connected with the administration or enforcement of the internal revenue laws including, but not limited to, penalties per IRC Section 6700 and/or injunction per IRC Section 7408. Both code sections pertain to participation in the sale or promotion of abusive tax shelters." I R. 12
 Revenue Agent Conlon said that his "inquiry emanates from the participation of Balanced Financial Management, Inc., in the sale of 'master recording' leasing shelters promoted by Jarelco, Inc....." Id. Conlon stated that the IRS believes that "the master recording cost is no more than the cash payment provided by Jarelco, Inc., to Oriolo Educational Publications, Inc., and has great doubt as to the purported valuation of the 'master recording' represented by the promissory note and, hence, the availability of the tax credit." Id. at 13. Conlon also said that "[t]he materials and testimony sought by the summons and relating to the tax (penalty) liabilities under examination are not in my possession and not to my knowledge in the possession of the Internal Revenue Service." Id. at 14. Conlon said that "[a]ll administrative steps required by the Internal Revenue Code for issuance of a summons have been taken." Id. at 13.
 
 
 [2]
 We note that Powell refers to "the adversary hearing to which the taxpayer is entitled before enforcement is ordered." Powell, 379 U.S. at 58, 85 S.Ct. at 255 (footnote omitted); see also Donaldson v. United States, 400 U.S. 517, 524-25, 91 S.Ct. 534, 539-540 (1971); United States v. Euge, 444 U.S. 707, 719, 100 S.Ct. 874, 882, 63 L.Ed.2d 141 (1980). "This hearing is not, however, automatic. While courts may have disagreed on the appropriate standard, they have agreed that the taxpayer must make some threshold showing to be entitled to the hearing." Kis, 658 F.2d at 539 n. 39. That showing must meet the test we stated above--namely that the taxpayers must refute the Government's prima facie case or must factually support an affirmative defense
 We adopt this test because it more accurately reflects "Congress's concern that summons enforcement proceedings be concluded rapidly, while at the same time the taxpayer is protected from summonses that may be an abuse of process." Id. at 540 (footnote omitted); see United States v. Scholbe, 664 F.2d 1163 (10th Cir.1981); United States v. Security Bank and Trust Company, 661 F.2d 847, 851 (10th Cir.1981); United States v. Traynor, 611 F.2d 809, 810 (10th Cir.1979).
 
 
 [3]
 We note the Rev.Proc. 83-78 has been modified and is effective as modified for returns, claims or applications filed after December 10, 1984. Rev.Proc. 84-84, 1984-1 C.B. 307
 
 
 [4]
 Title 26 U.S.C. Sec. 7605(b) (1982) provides:
 (b) Restrictions on examination of taxpayer.--No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, ... after investigation, notifies the taxpayer in writing that an additional inspection is necessary.
 
 
 [5]
 Title 26 U.S.C. Sec. 6103(a)(1) (1982) provides that returns and return information shall be confidential, and except as authorized by this title, no officer or employee of the United States, "shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section."
 
 
 [6]
 We note that taxpayers provide as supplemental authority Mid-South Music Corporation v. Kolak, 756 F.2d 23 (6th Cir.1984). In Mid-South Music Corporation, taxpayer complains about a pre-filing letter sent by IRS officials to investors in a tax shelter marketed by Mid-South informing them that based on IRS review of Mid-South "purported tax deductions" from that investment would not be allowed and investors claiming such deductions would be subject to penalties. Id. at 24. They allege that this letter revealed taxpayer's identity as a taxpayer and the fact that it was subject to IRS audit, thereby disclosing tax return information in violation of 26 U.S.C. Sec. 6103. Id. The district court held that no violation of Section 6103 had been stated in the complaint. Id. The appellate court found that Mid-South's complaint stated "a colorable claim." Id. at 25. The court remanded for "a possible exception under Section 6103(e)(7) and other similar provisions." Id. at 26. In Mid-South Music Corporation the issue whether disclosures made in the pre-filing letters abused the court's process as defined by Powell was not presented
 
 
 [7]
 As stated by the court in Garden State National Bank,
 "[T]he purpose of the good-faith inquiry is to determine whether the agency is honestly pursuing the goals of Sec. 7602 by issuing the summons." LaSalle, 437 U.S. at 316, 98 S.Ct. at 2367. Those goals may be summarized as (1) ascertaining the correctness of a return, (2) making a return where none has been made, (3) determining tax liability, and (4) collecting taxes. LaSalle cautions that the I.R.S. "at all times must use the summons authority in good-faith pursuit of [these] congressionally authorized purposes," id. at 318, 98 S.Ct. at 2368.
 Garden State National Bank, 607 F.2d at 68.
 
 
 [8]
 Title 26 U.S.C. Sec. 7609(f) (1982) provides:
 (f) Additional requirement in the case of a John Doe summons.--Any summons described in subsection(c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that--
 (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,
 (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and
 (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.
 
 
 [9]
 In his declaration under penalty of perjury, Revenue Agent Conlon stated:
 I did not agree to suspend, waive, or postpone Mr. Crider's appearance pursuant to the summons in issue. When Mr. Hider indicated he would not provide any information until he received a response from the Regional Commissioners, I indicated that I understood his position. I did not state, or indicate, that I agreed with it. I specifically stated the Denver District examination would continue as before and would not be suspended pending a decision from the Regional Commissioners.
 I R. 117.
 
 
 [10]
 Taxpayers contend that the application of the principles of the Anti-Injunction Act, 26 U.S.C. Sec. 7421, by the district court in its interpretation of taxpayers' motion to dismiss petition as a motion for injunction and subsequent denial of the motion constituted a mistake of law for which relief should have been provided pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure. Because the district court made the proper determination that the Powell requirements were met, citing 379 U.S. at 57-58, 85 S.Ct. at 254-255, and correctly ruled that taxpayers "shall obey the government's summons," I R. 142, we need not reach taxpayers' contention that the district court's application of the Anti-Injunction Act was improper. In any event, a proper basis for the enforcement order was stated by the court
 
 
 [11]
 The Government contends that the Department of Justice trial attorney never received the order to show cause advising of the December 14 hearing. However, the Clerk's certificate of service attests to service of the order on that attorney and on the United States Attorney and taxpayers' counsel by mail on November 28, 1984. The Government disputes receipt of notice by the attorney in Washington, but does not dispute receipt of the notice by the U.S. Attorney's office in Denver. Brief for the Appellants in No. 85-1238 at 4. We therefore reject the argument of the Government on lack of notice
 
 
 [12]
 There is no dispositive difference between standards involved in an award of attorney's fees under the Equal Access to Justice Act, which provides for an award of attorney's fees if the Government's position was not "substantially justified," 28 U.S.C. Sec. 2412(d)(1)(A), and 26 U.S.C. Sec. 7430, which provides for an award of attorney's fees if the Government's position was "unreasonable." Kaufman v. Egger, 584 F.Supp. 872, 877 n. 1 (D.Me.1984), aff'd, 758 F.2d 1 (1st Cir.1985). "It was not the purpose of the Equal Access to Justice Act to penalize the government for committing procedural defaults that help the private parties who are the Act's intended beneficiaries." McDonald v. Schweiker, 726 F.2d 311, 316 (7th Cir.1983). Here, we also do not believe that 26 U.S.C. Sec. 7430 was intended to penalize the Government for failure to appear at the contempt hearing. Since the position of the Government in commencing the contempt proceeding was not unreasonable, the attorneys' fees should not have been awarded