**DONOVAN, Raymond J., Secretary of Labor, United States Department of Labor**

v.

**SPADEA, Samuel, Appellant.**

**Nos. 84–1732, 84–1766.**

United States Court of Appeals, Third Circuit.

Argued Jan. 15, 1985.

Decided March 18, 1985.

Rehearing and Rehearing In Banc Denied April 12, 1985.

Victor J. Van Bourg (argued), Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for appellant; David W. Elbaor, Connerton, Bernstein & Katz, Washington, D.C., of counsel.

Joan M. Roller (argued), Atty. U.S. Dept. of Labor, Marshall H. Harris, Regional Sol., Philadelphia, Pa., Edward S.G. Dennis, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before HUNTER, HIGGINBOTHAM, Circuit Judges, and DEBEVOISE,* District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal arises from two orders of the United States District Court for the Eastern District of Pennsylvania. One ordered appellant Samuel Spadea to comply with a subpoena ad testificandum issued by the Department of Labor ("DOL"). The other held him in civil contempt of court for refusing to do so. Because we hold that the subpoena is valid and that Spadea's refusal to comply with it was without just

---

* Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

cause, we will affirm the judgments of the district court.

## I. FACTS AND PROCEEDINGS BELOW

In the spring of 1984, DOL's Labor-Management Services Administration ("LMSA"), to which the Secretary of Labor had delegated his powers under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 401–531 (1982), began an investigation into the activities of the Iron Workers District Council of Philadelphia and Vicinity ("District Council"). The investigation was part of LMSA's Compliance Audit Program, under which it probed possible violations of LMRDA. District Council Treasurer Samuel Spadea refused to cooperate with LMSA investigators. Consequently, on March 26, 1984, LMSA's Regional Administrator, Hilary Sheply, issued a subpoena ad testificandum addressed to Spadea. Although Spadea appeared at the time and place specified, he refused to testify.

The Secretary of Labor ("the Secretary") therefore brought suit to enforce the subpoena. The district court entered an order directing Spadea to show cause why the relief sought by the Secretary should not be granted. After a show cause hearing on November 26, 1984, the district court rejected Spadea's challenges to the validity of the subpoena, and ordered Spadea to appear for questioning that afternoon at the DOL's Philadelphia offices. Spadea made the required appearance, but once again refused to testify, asserting the Fifth Amendment privilege against self-incrimination.

The Secretary then petitioned the district court for an order holding Spadea in civil contempt of court. On December 7, 1984, at the hearing on the government's motion, the district court asked Spadea the following six questions, which had been framed by the Secretary:

Is this your by-laws of the District Council?

What is the geographical area of the Iron Workers, Philadelphia and Vicinity ...?

[W]hat is the date of the last regularly scheduled officer election in the District Council?

[I]s this ... the latest copy of the constitution of the Iron Workers?

[A]re you an officer of the District Council of Philadelphia and Vicinity?

[H]ow long have you been an officer of the District Council and what is your position in the District Council?

App. at 284, 289, 291, 294, 297, 300.

Spadea, again asserting the Fifth Amendment privilege against self-incrimination, refused to answer each of these questions. The district court ruled that none of the questions was likely to elicit incriminatory responses, and directed Spadea to answer. When he refused to do so, the district court held him in civil contempt of court, and ordered that he be committed into the custody of the United States Marshal at Philadelphia until he answers the questions.

## II. VALIDITY OF THE SUBPOENA

### A.

LMRDA empowers "the Secretary or any officers designated by him" to issue subpoenas for the purpose of investigating possible violations of the Act. 29 U.S.C. § 521(b). Spadea argues that the district court erred in enforcing the subpoena because the officer who signed it, Hilary Sheply, was not duly designated by the Secretary. This argument is premised upon the fact that in May 1984, after the subpoena was issued but before the district court's enforcement order, DOL underwent an internal reorganization. Prior to this time, the Secretary's powers under both LMRDA and the Employee Retirement and Income Security Act ("ERISA") had been delegated to LMSA. *See* United States Department of Labor, Secretary's Order 9–77 (Sept. 14, 1977). On May 3, 1984, after the LMSA's ERISA powers had been transferred to another agency, LMSA was dismantled, and the Secretary's enforcement powers under LMRDA were redelegated to the newly-created Office of Labor-Management Standards ("OLMS"). *See* United States

Department of Labor, Secretary's Order No. 3–84 (May 3, 1984). Before this reorganization, the Secretary's subpoena power under LMRDA had been delegated to LMSA Regional Administrators. *See* United States Department of Labor, Labor-Management Services Administration Order No. 5–5, (Sept. 30, 1981). After the reorganization, the subpoena power was redelegated to OLMS Area Administrators. *See* United States Department of Labor, Office of Labor-Management Standards Order No. 4–1 (August 16, 1984).

Thus on March 26, 1984, the date that Sheply issued the subpoena, he was duly authorized to do so as Regional Administrator of LMSA. Spadea does not contest this. Rather, his argument is that the subpoena was invalid at the time that the district court enforced it. In essence, he argues that the subpoena expired when OLMS supplanted LMSA and when the subpoena power was redelegated to OLMS Area Administrators. This argument is without merit. Congress has delegated subpoena power under LMRDA to the Secretary. This congressional delegation of power did not lapse merely because the Secretary redelegated it from one instrumentality of his Department to another. "The acts of administrative officials continue in effect after the end of their tenures until revoked or altered by their successors in office. Any other general rule would pose an undue burden on the administrative process." *United States v. Wyder*, 674 F.2d 224, 227 (4th Cir.), *cert. denied sub nom. Mallory v. United States*, 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982). *Accord Donovan v. National Bank of Alaska*, 696 F.2d 678, 682–83 (9th Cir.1983). We hold, therefore, that neither the replacement of LMSA with OLMS nor the displacement of the subpoena power from Regional to Area Administrators affected the validity of this subpoena.

### B.

■ Spadea also argues that the district court erred in enforcing the subpoena because it was issued for an improper purpose. LMRDA empowers the Secretary to conduct investigations "to determine whether any person has violated or is about to violate any provision of [the Act]" except Title I, and to issue subpoenas to facilitate such investigations. 29 U.S.C. § 521(a), (b). The subpoena served upon Spadea states that its purpose is to determine "whether any person has violated or is about to violate any provisions of the Labor-Management Reporting and Disclosure Act, ... except Title [I] or amendments made by the Act to other statutes." App. at 3 (citations omitted). The subpoena is, therefore, squarely within the statutory powers of the Secretary.

Nevertheless, Spadea argues that the subpoena was issued for an improper purpose because LMSA's primary objective was to uncover possible criminal violations of LMRDA. He urges us to recognize a general, albeit nonconstitutional, rule that administrative subpoenas issued to develop criminal cases are unenforceable. But the cases Spadea relies upon, *Powell v. United States*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), and *United States v. La Salle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), do not establish any such general rule. *Powell, Donaldson,* and *La Salle* are decided under section 7602 of the Internal Revenue Code, which formerly gave the Commissioner of Internal Revenue investigative powers only for certain civil purposes. *See* 26 U.S.C. § 7602 (1982), (amended by Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324 (1982)). These cases do no more than establish standards for determining when an administrative agency that has only civil enforcement powers is engaged in an investigation aimed at developing a criminal case, and is hence acting beyond its statutory authority.

■ As the Supreme Court stated in *La Salle*, the validity of administrative subpoenas "depend[s] ultimately upon whether they [are] among those authorized by Congress." 437 U.S. at 307, 98 S.Ct. at 2362. Accordingly, where Congress has empow-

ered an administrator to investigate criminal violations, *Powell* and its progeny are inapplicable, and courts have not hesitated to enforce administrative subpoenas aimed at developing criminal cases. *See, e.g., Pickel v. United States*, 746 F.2d 176, 185 (3d Cir.1984) (I.R.S. summons aimed at investigating criminal violations is valid under I.R.C. § 7602 as amended by TEFRA); *S.E.C. v. Dresser Industries*, 628 F.2d 1368, 1378 (D.C.Cir.) (*La Salle* applies solely to statutory scheme of I.R.C.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

In sum, we find no support for the extraordinary proposition that federal courts have created, or would be free to create, nonconstitutional constraints upon the power of Congress to authorize investigations into possible violations of federal laws. The subpoena in this case was issued for a proper purpose, since it is within the powers Congress has delegated to the Secretary. The district court's enforcement order will therefore be affirmed.

### C. THE FIFTH AMENDMENT

 Finally, Spadea appeals the district court's order holding him in civil contempt of court. He argues that, under the Fifth Amendment's Self-Incrimination Clause, he had just cause for refusing to answer the six questions put to him by the court. As the Supreme Court held in *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951), "[t]he witness is not exonerated from answering merely because he declares that in doing so he would incriminate himself—his say-so does not of itself establish the hazard of self incrimination. It is for the court to say whether his silence is justified." In order for the court to find that the privilege against self-incrimination applies, it must be "evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486–87, 71 S.Ct. at 818.

Spadea asserts that the *Hoffman* standard is met here because the Secretary's investigation might uncover evidence of criminal violations of LMRDA. However, the contempt judgment here was based on his refusal to answer six particular questions concerning the length of his tenure as a union officer, the territorial jurisdiction of the District Council, and the like. We agree with the district court that these questions are facially innocuous and do not appear likely to elicit incriminatory responses. We are mindful that the Fifth Amendment privilege may be invoked not only against direct admissions of crimes, but also against disclosures that might furnish a "link in a chain of evidence needed to prosecute the claimant...." *Id.* at 486, 71 S.Ct. at 818. *Hoffman*, however, admonishes that "this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Id.* Again, we agree with the district court that Spadea could have no such "reasonable cause to apprehend danger" from direct answers to the particular questions that the court asked. We will therefore affirm the judgment of the district court.