**UNITED STATES of America, Appellee,**

v.

**EDUCATIONAL DEVELOPMENT NETWORK CORPORATION,**
**Appellant at No. 89–1239.**

**UNITED STATES of America, Appellee,**

v.

**Gerald KRESS, Appellant at No. 89–1240.**

**Nos. 89–1239, 89–1240.**

United States Court of Appeals,
Third Circuit.

Argued July 25, 1989.

Decided Sept. 7, 1989.

Rehearing and Rehearing In Banc
Denied Oct. 17, 1989.

---

738

Gregory T. Magarity (argued) Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for appellants.

Lee J. Dobkin (argued), Asst. U.S. Atty., U.S. Attys. Office, Philadelphia, Pa., for appellee.

Before GIBBONS, Chief Judge, HUTCHINSON, Circuit Judge, and WOLIN, District Judge *.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

The issue in this case is whether the criminal division of the United States Attorney's Office's (USAO's) use of subpoenas that the Department of Defense Inspector General issued after the USAO's criminal division filed a Federal Rule of Criminal Procedure 6(e) Notice of Disclosure violat-ed the appellants' Fifth Amendment rights to due process and indictment only by action of a grand jury. We conclude that it did not and will affirm the district court's orders of judgment and conviction.

### II.

Educational Development Network Corporation (EDN) and its owner, Gerald Kress (Kress), entered into a non-competitive contract with the United States Department of Defense (DOD) to provide an educational and employment training program to the Army National Guard Bureau (Guard). Lieutenant Colonel Robert Allen Baxter (Baxter),[1] chief of the Guard's Recruitment and Retention Center, was the Contract Officer Representative for the EDN contract. Baxter had significant contact with EDN and Kress and oversaw and approved the work called for by EDN's contract. In the summer of 1986, a former EDN employee and several government officials contacted the USAO about possible wrongdoing in connection with the cost and pricing information EDN was providing to the DOD.[2] The meetings that followed were attended by representatives from the civil and criminal divisions of the USAO and William Weinstein (Weinstein), a special agent of the DOD Inspector General, Defense Criminal Investigative Service. EDN was informed of an impending investigation by Assistant United States Attorney Lee J. Dobkin (Dobkin) of the USAO criminal division around September 22, 1986.

On October 2, 1986, the USAO's criminal division opened a grand jury file on EDN, Kress and Baxter and filed an *ex parte* Rule 6(e) Notice of Disclosure with the United States District Court for the East-

---

* Hon. Alfred M. Wolin, District Judge of the United States District Court for the District of New Jersey, sitting by designation.

1. A jury found Baxter guilty of receiving an illegal gratuity. He has separately appealed his conviction, at No. 89–1214. We affirm his conviction in a published opinion issued today.

2. The indictment alleged that EDN and Kress became 50% owners in Baxter's family race car operation, Performance Formula, Inc., and supplied approximately $61,400 in funding to it.

ern District of Pennsylvania.[3] It listed Dobkin as the Assistant United States Attorney in charge of the file. The grand jury docket sheet shows no further activity until January 13, 1988.

On October 3, 1986, Weinstein served an Inspector General (IG) subpoena on EDN. On October 30, 1986, before the documents were due, a federal magistrate issued a search warrant to the DOD covering many of the same documents.[4] The DOD took possession of documents during the search and later when EDN turned over the remaining subpoenaed documents. The documents were made available to the civil and criminal divisions of the USAO, the DOD and the Army Criminal Investigation Division (Army), which was investigating Baxter. The government candidly admits on appeal that the USAO and DOD agreed to conduct a joint investigation and to use DOD IG subpoenas so that the agencies could share the evidence obtained.[5]

On January 6, 1988, the DOD was told to complete all communications with the civil division of the USAO by January 13, 1988, when a "new phase" of the criminal investigation was to begin. Appendix (App.) at 56a. The information collected during the

joint investigation was then presented to the grand jury. It returned an indictment on July 13, 1988. The indictment alleged that EDN and Kress submitted inflated estimates of EDN's costs on its contract to the DOD and that Baxter received illegal gratuities in return for approving them.

On October 14, 1988, the defendants filed a motion to compel discovery in aid of a suppression motion, alleging that the USAO acted in "bad faith" when it used IG subpoenas and a search warrant to gather evidence during a joint grand jury/criminal/civil/administrative/military investigation. The motion sought an order compelling additional discovery and requested a hearing to determine whether the USAO had in bad faith violated defendants' rights under the Fifth Amendment to due process and indictment only by action of a grand jury.[6] Defendants based their requests on *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), which held *inter alia* that the Internal Revenue Service (IRS) must use its summons authority in good faith when pursuing a civil/criminal investigation. After a hearing, the district court denied the motion, holding that *LaSalle* applied only to

---

**3.** As we wrote in *In re Grand Jury Proceedings,* 309 F.2d 440, 443 (3d Cir.1962): "The proceedings before a grand jury are protected against disclosure by the common law policy of secrecy. This policy is continued in Rule 6(e). . . ." By filing a Notice of Disclosure with the court, the USAO informed the court that it intended to disclose grand jury materials to the government personnel set forth in the notice, so that they could assist in the prosecution.

**4.** Weinstein stated by affidavit that the search warrant was issued "due to alleged misconduct in EDN's production in response to the I.G. subpoenas." Appendix (App.) at 55a.

**5.** The record contains a Chronological Activity Summary of agent Klug (Klug), who was in charge of the Army investigation. App. at 120a–225a. Some of Klug's entries indicate that Dobkin agreed to help the Army get subpoenas for Baxter's tax returns. *Id.* at 148a, 156a. The IRS was also interested in the Army's procurement of an *ex parte* order gaining access to EDN's and Baxter's IRS records. *Id.* at 196a. There is also other evidence that the investigators clearly sought to avoid using the grand jury because

that information would have to be kept secret. An investigator wrote:

> November 24, 1987:
> I am not opposed to combining our invest[igation] with that of [DOD], but if we do not do that we must go for the corporate check register with DOD IG subpoenas . . . *not* Grand Jury Subpoenas. Don't lose sight of Rule 6(e) requirements/problems.

*Id.* at 206a. Nevertheless, Dobkin later decided to use grand jury subpoenas to gather this information. *Id.* at 209a.

In his affidavit Weinstein indicated that he was the person deciding whether to issue IG subpoenas. *Id.* at 54a–55a. However, at oral argument the USAO stated that the issuance of IG subpoenas was controlled by both the USAO and the DOD and that they agreed to use them in lieu of a grand jury investigation so that the USAO and the DOD could avoid the Rule 6(e) secrecy requirements and share the documents.

**6.** The Fifth Amendment states, in relevant part: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, . . . nor be deprived of life, liberty, or property, without due process of law. . . ." U.S. Const. Amend. V.

IRS investigations and not to the IG subpoenas.

On November 28, 1988, EDN, Kress and Baxter filed a motion to suppress and dismiss the indictment, based on the same argument. On November 29, 1988, after another hearing, the district court denied the motion. The court found:

> The defendants have failed to make out a prima facie showing of grand jury abuse. It is well-settled in this Circuit that grand jury proceedings are generally accorded a presumption of regularity and that a request for inspection of grand jury materials must be bottomed on more than an allegation that improper conduct has occurred and that discovery will verify this belief. Furthermore, although the defendants presented no evidence of improper disclosure of matters occurring before the grand jury, Special Agent Weinstein's affidavit demonstrates that no evidence was presented to the grand jury until January 1988, a date subsequent to the period during which defendants suggest that grand jury material may have been disclosed to the Department of Defense. Since the grand jury had not heard any evidence, there was nothing to disclose prior to January 1988 that would violate Rule 6(e).

App. at 279a.

On November 29, 1988, the date trial was to start, EDN and Kress pleaded guilty. In the plea agreement the defendants reserved the right to raise these issues on appeal from their convictions. They were sentenced on March 14, 1989 and filed this appeal on March 22, 1989.

### · III.

We have appellate jurisdiction over the district court's orders of judgment and conviction pursuant to 28 U.S.C.A. § 1291 (West Supp.1989). Since resolution of the issues EDN and Kress raise concerning the district court's orders involves questions of law, we exercise plenary review.

### IV.

EDN and Kress contend that the district court erred in denying their motion for suppression of all documents obtained by either the IG subpoena or the search warrant.[7] They base their contention on the argument that once the USAO's criminal division impaneled the grand jury and filed a notice of disclosure under Rule 6(e), the agency was not free to ignore the grand jury subpoena process and its secrecy requirements in favor of the IG subpoena process. Appellants say this raises serious issues about the constitutional role of the grand jury in restricting the government's inquisitory power over persons suspected of crime.

In presenting their argument appellants place great reliance on Federal Rule of Criminal Procedure 6(e)(2). However, we do not believe Rule 6(e) bars the USAO's criminal division from participating in other agencies' investigations before it actually begins presentation of evidence to the grand jury, and appellants refer us to no statutory or case law to the contrary. Rule 6(e)(2) provides in general that matters occurring before the grand jury may not be disclosed. Disclosure of such matters may only be made under the narrow exceptions listed in Rule 6(e)(3). The grand jury material may not be used "for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Rule 6(e)(3)(B). "Records, orders and subpoenas relating to grand jury proceedings shall be kept under seal...." Rule 6(e)(6). United States Attorneys do not have the power to subpoena evidence. They must ask the grand jury to do that. However, grand jury subpoenas often are issued as a matter of course. *See In re Grand Jury Proceedings,* 486 F.2d

---

7. In their reply brief appellants concede that there is no longer any need for discovery and a *Genser II/Serubo* hearing to determine whether the government acted in bad faith, given the USAO's acknowledgement of its role in the investigation and its control over issuance of the IG subpoenas. *See United States v. Genser,* 595 F.2d 146, 152 (3d Cir.) (*Genser II*), *cert. denied,* 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979); *United States v. Serubo,* 604 F.2d 807, 812 (3d Cir.1979).

85, 90 (3d Cir.1973) (*Schofield I*) (grand jury subpoenas are "instrumentalities of the United States Attorney's office").

The rationales for grand jury secrecy are:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir.1954); *see Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 n. 10, 99 S.Ct. 1667, n. 10, 60 L.Ed.2d 156 (1979); *SEC v. Dresser Indus.*, 628 F.2d 1368, 1382 n. 36 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

■ Once evidence is presented to the grand jury, the secrecy requirements of Rule 6(e) attach and prevent the government from sharing that information with persons other than those listed on the Notice of Disclosure. In this case the USAO did not present any evidence to the grand jury until January 13, 1988. Therefore, the secrecy requirements of Rule 6(e) did not attach until that time, and the USAO was free to share information uncovered in the joint investigation with the DOD and the Army. What occurred here is the USAO's disclosure of information obtained by the DOD to the grand jury, not the USAO's disclosure of information obtained by the grand jury to the DOD. Therefore Rule 6(e), requiring grand jury secrecy, would seem to have no application. In any event, we fail to find any Rule 6(e) violation, since it is clear that after January 13, 1988 the USAO's criminal division ceased communicating with the DOD and the Army about the investigation.

■ Appellants also argue that the evidence must be suppressed because the USAO's criminal division obtained it pursuant to subpoenas and a search warrant it had caused to be issued in a bad faith attempt to do an end run around the constitutional requirement that indictments be secured only through a grand jury. EDN and Kress base this argument on the fact that the USAO was involved in the investigation and controlled, at least partially, the issuance of the IG subpoenas. We do not minimize the concerns appellants express about the USAO's criminal division's conceded express avoidance of the grand jury by choosing instead to use the Inspector General's civil investigative powers in the investigation of crime, but they fail to direct us to any statutory, regulatory, or case law that prevents the USAO from doing so.

Appellants rely on dicta in *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), in support of their position that the use of civil investigative powers is improper when there is an ongoing criminal investigation. *LaSalle* involved an IRS agent who was using summonses to obtain evidence for a criminal investigation. The Supreme Court held that although an IRS agent has no statutory power to conduct a criminal investigation, it was almost impossible to conduct an IRS investigation without both civil and criminal implications. The Court concluded, based on its prior decision in *Donaldson v. United States*, 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971), that so long as the summonses were issued in good faith before the agent referred the case to the Justice Department for prosecution, they were enforceable. To establish bad faith, the complainant had to show that the IRS issued the summons for a purpose other than those authorized by Congress in 26 U.S.C.A. § 7602 (West 1989).

Appellants rely on the following language from *LaSalle:*

A referral to the Justice Department permits criminal litigation to proceed. The IRS cannot try its own prosecutions. Such authority is reserved to the Department of Justice and, more particularly, to the United States Attorneys. 28 U.S.C. § 547(1). *Nothing in § 7602 [of the Internal Revenue Code] or its legislative history suggests that Congress intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation. The likelihood that discovery would be broadened or the role of the grand jury infringed is substantial if post-referral use of the summons authority were permitted.* For example, the IRS, upon referral, loses its ability to compromise both the criminal and the civil aspects of a fraud case. 26 U.S.C. § 7122(a). After the referral, the authority to settle rests with the Department of Justice. Interagency cooperation on the calculation of the civil liability is then to be expected and probably encourages efficient settlement of the dispute. But such cooperation, when combined with the inherently intertwined nature of the criminal and civil elements of the case, suggests that it is unrealistic to attempt to build a partial information barrier between the two branches of the executive. Effective use of information to determine civil liability would inevitably result in criminal discovery. The prophylactic restraint on the use of the summons effectively safeguards the two policy interests while encouraging maximum interagency cooperation.

*LaSalle,* 437 U.S. at 312–13, 98 S.Ct. at 2365. (citations omitted) (emphasis added).

Appellants' reliance on *LaSalle* is misplaced. *LaSalle* was decided under § 7602 of the Internal Revenue Code and is relevant only in criminal cases involving the IRS. In *Donovan v. Spadea,* 757 F.2d 74,

77 (3d Cir.1985), the appellant asked us to "recognize a general, albeit nonconstitutional, rule that administrative subpoenas issued to develop criminal cases are unenforceable." We noted that the cases relied on by appellant, *LaSalle, Donaldson* and *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964), "do not establish any such general rule." *Donovan,* 757 F.2d at 77. We recognized that *LaSalle, Donaldson* and *Powell* "do no more than establish standards for determining when an administrative agency that has only civil enforcement powers is engaged in an investigation aimed at developing a criminal case, and is hence acting beyond its statutory authority." *Id.*[8] Therefore, although dicta in *LaSalle* appear to support appellants' position, we do not believe they apply to this case because neither the DOD nor the Army was acting beyond its statutory requirements in conducting its investigation.

In denying appellants' request for a hearing and suppression of the evidence, the district court relied on *United States v. Aero Mayflower Transit Co.,* 831 F.2d 1142 (D.C.Cir.1987). In that case, the Antitrust Division of the Justice Department was investigating the moving and storage industry. In September 1985, the Department of Defense Inspector General began his own investigation of DOD contractors. The Antitrust Division and the FBI contacted the Inspector General and suggested a "cooperative investigation." *Id.* at 1144. The Inspector General then issued subpoenas to the appellants, who refused to comply. They argued that the Inspector General had "rubber stamped" the subpoenas and that the real investigator was the Justice Department, which should have gotten its subpoenas from a grand jury. The Inspector General's subpoenas, they argued, were therefore issued for an improper purpose. The district court declined to pass on the scope of the Inspector General's independence and ordered compliance. On ap-

**8.** The Third Circuit cases relied on by appellants are also IRS cases. *See United States v. Genser,* 595 F.2d 146 (3d Cir.) (*Genser II*), cert. denied, 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979); *United States v. Genser,* 602 F.2d 69 (3d Cir.) (per curiam) (*Genser III*), cert. denied, 444 U.S. 928, 100 S.Ct. 269, 62 L.Ed.2d 185 (1979); *United States v. Serubo,* 604 F.2d 807 (3d Cir. 1979).

peal, the United States Court of Appeals for the District of Columbia Circuit made clear that the Justice Department was free to guide or influence the Inspector General and his subpoenas, "[s]o long as the Inspector General's subpoenas seek information relevant to the discharge of his duties." *Id.* at 1146. *See also United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 171 (3d Cir.1986) ("[W]e believe Congress intended that the courts accept the Inspector General's determination of what information is 'necessary to carry out the functions assigned [to him]' so long as the information is relevant to an Inspector General function."). The court in *Aero Mayflower* found nothing wrong with the Justice Department's use of IG subpoenas rather than grand jury subpoenas, since grand jury matters could not be shared with the DOD. It said that "no body of law, whether statutory or regulatory, explicitly or implicitly restricts the Inspector General's ability to cooperate with divisions of the Justice Department exercising criminal prosecutorial authority." *Aero Mayflower*, 831 F.2d at 1146.[9] Likewise, there are no such restrictions in this case.

> Appellants argue that
>
> [t]he question in *Aero Mayflower* should not have been did the interpretation of the Statute restrict the Justice Department's power to use the grand jury to obtain the same documents. It should have been, as in *LaSalle*, was there any Congressional intent to justify an interpretation or application which would expand the [Justice Department's] criminal discovery rights or infringe (even potentially by allowing [the Justice Department] to have an alternative [to]) the role of the grand jury.

Brief for Appellants at 27. Whatever our reservations regarding the USAO's use of IG subpoenas and its degree of involvement in the DOD and Army investigation, appellants' arguments are more properly addressed to the Congress than to a court.[10]

Although the USAO's criminal division is traditionally restricted to conducting investigations before a grand jury, on this record we see no law or principle that would prevent it from presenting to the grand jury facts properly uncovered in the course of lawful investigations by another agency.[11]

Appellants also rely on dicta in *Dresser Industries* and *United States v. Merit Petroleum, Inc.*, 731 F.2d 901, 905 (Temp. Emer.Ct.App.1984), in support of their argument that a party's rights could be compromised if he is confronted with simultaneous civil and criminal investigations. These cases do not apply. Both state that the party under investigation must show either that his rights will be prejudiced or that the investigating agency is acting in bad faith or using malicious tactics. Appellants fail to show how the criminal division's use of the IG subpoenas and search warrant prejudiced them. They also fail to show that the DOD or Army acted in bad faith or otherwise improperly in carrying out its investigations.

Finally, appellants allege that the USAO's criminal division "side-stepped" the procedural safeguards this Court established in *Schofield I*, 486 F.2d at 93, and in *In re Grand Jury Proceedings*, 507 F.2d 963, 964–65 (3d Cir.) (*Schofield II*), *cert. denied*, 421 U.S. 1015, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975). Those cases require that a party seeking enforcement of a sub-

---

**9.** The court found *LaSalle* "totally inapposite." *Aero Mayflower*, 831 F.2d at 1146.

**10.** A review of the relevant legislative history indicates that Congress expected cooperation between the IG and the Department of Justice in investigating and prosecuting fraud cases. *See* S.Rep. No. 1071, 95th Cong., 2d Sess. 6–7, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2676, 2681–82.

While the DOD did not receive its own IG until 1983, *see* Department of Defense Authori-

zation Act, 1983, Pub.L. No. 97–252, § 1117(a)(1), 96 Stat. 718, 750 (1982), nothing in the legislative history pertaining to the establishment of the post of DOD IG prohibits his cooperation with the Department of Justice.

**11.** There is nothing in this record to show that the agency investigation itself was improper or used as a subterfuge by the USAO once it was unable to obtain the subpoenas from a grand jury.

poena must show that (1) the agency has the power to request the evidence, (2) that each requested item is relevant to the investigation, and (3) that the evidence is sought in good faith. Here, the IG subpoenas were properly issued in the course of a DOD investigation. There is no allegation that the evidence was not relevant, that the DOD had no power to issue the subpoenas, or, as noted, of bad faith on the part of the DOD. Appellants' argument that the USAO's participation affected any one of the three prongs of the *Schofield* test is therefore without merit.

## V.

We conclude that the district court did not commit error when it denied appellants' motion to suppress evidence obtained by the use of IG subpoenas and a search warrant. We will therefore affirm the judgment and conviction orders of the district court.