UNITED STATES of America (Office of Inspector General, Department of Health and Human Services), Petitioner,

v.

MEDIC HOUSE, INC., Respondent.

No. 89–0941–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

Dec. 8, 1989.

E. Eugene Harrison, U.S. Attorney's Office, Kansas City, Mo., Steve Altman, Dept. of Justice, Commercial Litigation Section, Civ. Div., and Robin Epstein Schneider, Dept. of HHS, Office of General Counsel, Insp. Gen. Div., Washington, D.C., for petitioner.

Thomas P. O'Donnell and James B. Albertson, III, O'Donnell & Albertson, Overland Park, Kan., for respondent.

## ORDER

WHIPPLE, District Judge.

The petition here, filed October 2, 1989, seeks a summary order requiring compliance with an administrative subpoena. Respondent filed a memorandum in opposition to the petition on October 24, 1989. The answer seeks (1) to quash the subpoena, (2) denial of an order of enforcement, (3) alternatively, discovery by respondent, (4) a hearing after discovery, (5) a stay of any civil proceedings or sanctions by petitioner against respondent, (6) a protective order regarding documents relevant to any civil investigation until completion of any related criminal proceedings. Petitioner responded on November 24, 1989. Respondent filed a reply brief on December 6, 1989. For the reasons set forth below, respondent's requests will be ·denied, the petition for enforcement will be granted,

and respondent will be directed to comply with the subpoena.

## I. *Facts*

In October 1988, the Office of the Inspector General ("IG") for the Department of Health and Human Services ("HHS") began an investigation of respondent Medic House, Inc. The investigation focused upon allegations that respondent had engaged in improper billing, kickbacks, and other fraudulent conduct in the course of soliciting business and submitting Medicare claims for the provision of diabetic supplies to nursing homes. The IG is responsible for investigating alleged abuse of HHS programs, including Medicare. 5 U.S.C. App. 3 § 4(a).

Initially respondent's managers cooperated by meeting with IG Special Agent Frank Kram on October 21, 1988. They permitted him to visit respondent's billing office, and they provided some relevant information. They also indicated several times in the next five months a willingness to provide more information as requested and to cooperate fully with the investigation.

On January 21, 1989, at respondent's request, respondent met with an assistant United States attorney and Kram to discuss respondent's possible criminal liability. At the meeting the IG and agent asked for some specific records. In March 1989, respondent supplied some records, but not those which had been requested. On March 27, 1989, respondent notified the IG that it would not provide the requested records.

Petitioner issued an administrative subpoena *duces tecum* on April 18, 1989, and it was served by personal delivery on April 19, 1989. The return date on it was May 5, 1989. By letter dated April 28, 1989, respondent's counsel objected to virtually every request in the subpoena.

Kram reviewed the subpoena, revised it, reduced the number of requested items, and narrowed the scope of some others. A revised subpoena was issued on May 23, 1989, served by personal delivery on May 25, 1989, and was returnable on June 9, 1989. On June 6, 1989, the IG received from respondent's counsel a letter which was virtually identical to the April 28, 1989 letter objecting to virtually every request.

Counsel for the IG sent a letter on July 6, 1989, to respondent's counsel, responding to the objections and seeking compliance. Respondent's counsel wrote on July 14, 1989, that it would provide one group of records, but nothing else. Thereafter, the IG began this enforcement action.

## II. *Arguments*

Petitioner argues that this court has a strictly limited role in evaluating a request for enforcement of an administrative subpoena. The sole issue, petitioner argues, is whether the court's process would be abused by enforcement. Petitioner argues it meets the seminal test of *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950), as applied in *United States v. Westinghouse Elec. Corp.*, 788 F.2d 164, 166 (3rd Cir. 1986), so the subpoena should be enforced. Petitioner states that, as required by *Morton Salt*, the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant to the agency's inquiry. In its reply to respondent's opposition, petitioner also contends its request is made in good faith. Thus, petitioner argues, it has set forth a prima facie case for enforcement.

Respondent raises a variety of arguments in opposition to enforcement. It contends the IG has no authority to issue the subpoena, that the request is not relevant to its inquiry, that the demand is too vague, and that the requested materials already are in petitioner's possession or can be found elsewhere. Finally, respondent argues enforcement would violate respondent's rights under the fourth, fifth and sixth amendments of the United States Constitution.

## III. *Discussion*

### A. Enforcement Test

As noted by respondent, three requirements for enforcement are set forth in *United States v. Morton Salt Co.*, *supra*, 338 U.S. at 652, 70 S.Ct. at 368. A fourth

point was articulated in *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The four-part test is: (1) The inquiry must be within the authority of the agency. (2) The demand for information must not be too indefinite. (3) The information sought must be reasonably relevant to the inquiry. (4) The information must not already be in the government's possession.

### 1. *Agency's Authority*

█ Respondent first argues that the IG has no authority to investigate criminal violations of the Social Security Act, as set forth in Section 1128B (42 U.S.C. § 1320a–7b). Respondent contends that the investigative authority, if any, promulgated in 5 U.S.C.App. 3 § 4 requires respondent to refer any alleged criminal violations to the Attorney General. The respondent erroneously contends that the IG is outside its authority in conducting an investigation of possible criminal violations.

The Inspector General Act of 1978 (5 U.S.C.App. 3 §§ 1–11), as amended in 1988, establishes broad powers for the IG to fulfill its purpose "to prevent and detect fraud and abuse" as articulated in 5 U.S.C.App. 3 § 2(2)(B). Under Section 4(a)(4)(A) and (B), the IG is charged with conducting, supervising, or coordinating relationships among various governmental and non-governmental agencies and entities with respect to all matters relating to the prevention and detection of fraud and abuse, or the identification and prosecution of participants in such fraud or abuse. In 5 U.S.C.App. 3 § 9, an IG office was established for HHS, and the attendant functions, powers and duties were transferred to the office accordingly in that section.

The courts have recognized the IG's authority to conduct criminal investigations and to issue subpoenas in conjunction with those investigations. *See, e.g., United States v. Educational Dev. Network Corp.,* 884 F.2d 737, 740–744 (3rd Cir.1989) (hereafter, *"EDN"*) (recognizing IG's authority to issue subpoena in criminal investigation); *United States v. Aero Mayflower Transit Co., Inc.,* 831 F.2d 1142, 1145 (D.C.Cir.1987) (hereafter, *Aero*) (recognizing both civil criminal investigative authority with coextensive subpoena power). *See also, United States v. Westinghouse Elec. Corp., supra,* 788 F.2d at 170 (hereafter, "Westinghouse") (IG's subpoena power to be interpreted broadly); *United States v. Art Metal–U.S.A. Inc.,* 484 F.Supp. 884, 887 (D.N.J.1980) (likelihood of independent criminal proceedings is no bar to enforcement of IG's subpoena).

Regardless of whether criminal allegations are likely to develop from the IG's investigation, the IG has authority to issue the subpoena here. The authority is established by statute and recognized by the courts.

### 2. *Vagueness and Burden of Demand*

█ Respondent suggests the subpoena is too indefinite, unduly burdensome, and would disrupt normal operation of its business. It relies upon *E.E.O.C. v. St. Louis Dev. Disabilities Treatment Center,* 118 F.R.D. 484, 486 (E.D.Mo.1987). Respondent contends that the subpoena has no dates or geographical dimensions, so it could not know whether it could ever comply with the subpoena. Further, respondent believes compliance would disrupt operations seriously.

Respondent's argument appears to be less than candid. Petitioner responds that the paragraphs 4, 5, 9, and 10 of the subpoena inherently are limited to the 1½-year period in which respondent was contacting nursing homes in regard to the purchase of diabetic monitors and testing supplies. Paragraphs 9 and 10 seek guidelines respondent distributed to employees on Medicare coverage and the trade publications, bulletins, newsletters and other materials on Medicare coverage which respondent received from outside sources. Petitioner represents that relatively few guidelines, instructions and materials have been published or distributed on the stated subjects. Petitioner suggests that the volume of material would be so small that it could not reasonably be expected to disrupt the business operations. Perhaps most significant, however, is that the IG offered to defer the

rest of its request if respondent would produce a set of five-by-eight cards maintained on all nursing homes contacted by respondent. Respondent's refusal to comply with even such a small request suggests the amount of burden was not the reason for refusal.

Under the circumstances, respondent has failed to carry its burden of showing that the subpoena is too vague, or too burdensome, to require compliance. A review of the subpoena reveals it to be sufficiently direct and precise. Furthermore, respondent's unsubstantiated belief—that compliance would disrupt business operations—is insufficient, standing alone, to avoid the subpoena.

### 3. *Relevance*

Respondent first asserts that the subpoena apparently concerns an investigation into possible criminal violations. Having argued that the IG has no authority to conduct criminal investigations, respondent argues that the subpoena cannot be relevant to a lawful investigation. As stated above, however, this court recognizes (as others have) that the IG has authority to conduct investigations of possible criminal violations. Therefore, the first relevance argument fails.

■ Respondent also argues that the subpoena's request in paragraph 1 is irrelevant. Apparently it argues that, as a "supplier", it is not required to report routinely the identity of each person with ownership or control interest in such entity. In the absence of such a reporting requirement, respondent stretches to the remarkable conclusion that such information never could be relevant to a fraud investigation. This argument is specious.

### 4. *Information in Possession*

■ Respondent argues that petitioner either has the information it seeks, or has independent means to obtain it. It relies in part on 5 U.S.C.App. 3 § 6(a)(4), which provides that documents may be obtained from other federal agencies. Petitioner replies, and the court agrees, that such a position is unacceptable. A substantial part of the

significance of materials is the condition in which they are maintained by the owner. Even if the same sort of information can be obtained elsewhere, that availability is not the same as acquiring it from the recordkeeper in the natural condition in which it is kept.

Respondent contends that the information can be obtained by accumulating it from a variety of sources, including diverse federal agencies, nursing homes and patients. The variety of sources virtually guarantees that the information would not be found in a condition similar to that maintained by respondent for the same information. Thus, what might be gathered from other sources is not the "same" information, as contemplated in *United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255.

### B. Abuse of Process

■ Where, as here, petitioner establishes a prima facie case for enforcement under *Morton Salt* and *Powell, supra,* the burden shifts to the respondent to show that enforcement would be an abuse of the court's process. *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1444–1445 (10th Cir.1985). The burden is a heavy one. *Id.* Respondent challenges enforcement of the subpoena as an abuse of process by claiming denial of constitutional rights, and improper conduct.

### 1. *Constitutional Rights*

Respondent suggests petitioner has acted in bad faith because of the possibility of parallel civil and criminal lawsuits. The deprivation of constitutional rights guaranteed by the fifth and sixth amendments would occur because such rights do not attach in civil investigations. Respondent urges that petitioner should not have access to materials and information in a civil suit if petitioner would not have access to such information in a criminal suit. That is, respondent contends that any civil investigation should be suspended pending completion of the criminal investigation. It contends a criminal investigation would

permit less discovery because of the constitutional limits.

Contrary to respondent's position, the IG's authority to conduct parallel criminal and civil investigations has been recognized by the courts. *See, United States v. Educational Dev. Network Corp., supra,* 884 F.2d at 740–744; *United States v. Aero Mayflower, supra,* 831 F.2d at 1145–6; *cf., Sec. and Exch. Comm'n v. Dresser Industries, Inc.,* 628 F.2d 1368, 1374 (D.C.Cir.) (*en banc*), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980) ("In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence.")

■■■ Respondent first suggests that it is entitled to investigation by a grand jury, rather than the IG. Petitioner correctly notes that, while indictment by grand jury is guaranteed by the fifth amendment, there is no guarantee that investigation would be only by a grand jury. Furthermore, the grand jury's investigation need not be any narrower than that of the administrative subpoena in question.

■■■ Petitioner also correctly notes that respondent errs in its understanding of grand jury secrecy, as required by Rule 6(e), Fed.R.Crim.P. Such secrecy applies only to materials presented to a grand jury. So far, apparently no grand jury has requested or obtained anything from respondent, so the secrecy rule need not apply yet. Here, no referral to the Justice Department for criminal prosecution has been made, and no grand jury has been called. While Rule 6(e) prevents disclosure of what is presented to the grand jury, it does not prevent an IG agent from disclosing to prosecutors, other agencies or a grand jury what the agent has discovered.

■■■ The fifth amendment right to be free from self-incrimination likewise is not violated by this subpoena. First, it is directed to the corporate records' custodian, who is not entitled to assert a fifth amendment right as grounds to resist a subpoena for corporate records. *Braswell v. United States,* 487 U.S. 99, 108 S.Ct. 2284, 2290–2295, 101 L.Ed.2d 98 (1988).

■■■ Second, in this preliminary stage of the investigation, fifth amendment rights are not yet implicated. There has been no referral for criminal prosecution, or any grand jury action, or any charges filed, or any arrests, or any custodial interrogation. *See Sec. and Exch. Comm'n v. Dresser Industries, Inc., supra,* 628 F.2d at 1376–1378 and 1388. Even if there had been a referral for criminal prosecution, and/or a separate criminal investigation was under way, the IG still could issue a subpoena for civil investigation—absent specific evidence of agency bad faith or malicious governmental tactics. *United States v. Merit Petroleum, Inc.,* 731 F.2d 901, 905 (Temp.Emerg.Ct.App.1984), quoting *Dresser Industries, supra,* 628 F.2d at 1375.

Respondent's reliance on *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) is misplaced. *See, United States v. Aero Mayflower Transit Co., Inc., supra,* at 1145–1146. In *LaSalle,* the Supreme Court held that the Internal Revenue Service could not become an information-gathering agency for the Justice Department's criminal prosecutions. *LaSalle,* 437 U.S. at 317, 98 S.Ct. at 2367. However, the finding was based upon the complete absence of any authority for use of IRS summonses solely for criminal investigations. *Id.* n. 18.[1] By contrast, the IG in this instance has express authority to conduct criminal investigations, so *LaSalle* cannot support respondent's position.

### 2. *Improper Conduct*

■■■ Respondent contends the IG is proceeding in bad faith to use the less-restrictive procedures for administrative and civil investigations to circumvent the more

---

**1.** After *LaSalle,* Congress broadened the IRS's summons power to allow inquiry into any revenue-related offense. *See* 26 U.S.C. § 7602(b)–(c) (1982). Congress noted the costs of protracted litigation at the summons enforcement stage. S.Rep. No. 494, 87th Cong., 2d Sess. 285, *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 1031.

rigid constitutional limits on criminal cases. Accordingly, respondent seeks to stay all proceedings until any criminal investigation is complete, and to be permitted discovery of petitioner—no doubt to seek evidence of bad faith or malicious tactics.

Respondent also asserts that the IG agent's "friendly overtures" and failure to disclose a pending formal investigation were improper. It relies on *Securities Exch. Comm'n v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 317–318 (5th Cir.1981), which noted that "fraud, deceit or trickery" is grounds for denying enforcement of an administrative subpoena. It also includes a test for when improper conduct would be an abuse of process.

In *United States v. Merit Petroleum, Inc., supra*, 731 F.2d at 905, the court applied a high standard by requiring a showing of special circumstances demonstrating specific evidence of bad faith or malicious tactics. Respondent has set forth no such special circumstances, nor has it submitted specific evidence of bad faith. Rather, it notes that potential criminal exposure exists, and then concludes therefrom that the agency must be acting improperly in conducting a criminal investigation under civil investigation rules. This argument overlooks the fact that the same information which could be relevant to a criminal case could be sought pursuant to a legitimate civil investigation. Of course, it also overlooks the authority, and duty, to conduct investigations into possible criminal activities.

The access to discovery also was examined in the *Merit Petroleum* case, where the court said, at 905:

The granting or denial of discovery in a subpoena enforcement case is within the discretion of the district court. *United States v. Thriftyman, Inc., supra*, 704 F.2d [1240] at 1249 [ (TECA 1983) ]; *United States v. RFB Petroleum, Inc., supra*, 703 F.2d [528] at 533 [ (TECA 1983) ]. Subpoena enforcement proceedings are not intended to be " 'exhaustive inquisitions into the practices of regulatory agencies.' " *United States v. Thriftyman, supra*, 704 F.2d at 1249.

This Court most recently discussed the importance of a "speedy resolution" of enforcement actions in *United States v. Texas Energy Petroleum Corp.*, 719 F.2d 394, 397, 398 (TECA 1983).

\* \* \* \* \* \*

It is clear that Merit has failed to present specific facts sufficient to establish any substantial preliminary showing of bad faith or improper purpose which would justify any further delay in enforcement of 1981 subpoena. There was no error in denying discovery.

Without some substantial basis for believing bad faith, improper purpose, or malicious tactics, this court is unwilling to quash the subpoena. Furthermore, without some substantial basis, there will be no permission for a fishing expedition in quest of a reason to suspect improper conduct. The legitimate investigatory duties of inspectors general should not be hamstrung by the "exhaustive inquisitions" eschewed in *Merit Petroleum*.

Respondent's only hint of improper conduct, or "fraud, deceit or trickery", is the IG agent's "friendly overtures and the agency's failure to disclose a pending formal investigation." The test promulgated in *ESM Gov't Sec., supra*, 645 F.2d at 317–318, is (1) whether the agency intentionally or knowingly misled the subject of the subpoena, (2) whether that party actually was misled, and (3) whether the subpoena was the result of improper access to the party's records. In this instance, there is not sufficient showing of intentional or knowing efforts to mislead.

Some kind of affirmative action (or inaction when there was a duty to act) is necessary before fraud, deceit or trickery can be found. *See United States v. Prudden*, 424 F.2d 1021, 1032 (5th Cir.1970), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62; *see also, Spahr v. United States*, 409 F.2d 1303, 1306 (9th Cir.), *cert. denied*, 396 U.S. 840, 90 S.Ct. 102, 24 L.Ed.2d 91 (1969). Recalling *United States v. Tweel*, 550 F.2d 297 (5th Cir.1977), and *Stuart v. United States*, 416 F.2d 459 (5th Cir.1969), the court in *ESM Gov't Sec.* noted that an agent has no duty to state a

criminal investigation is under way, unless his silence affirmatively would mislead a person to believe no such investigation is in progress. *Securities Exch. Comm'n v. ESM Gov't Sec., supra,* 645 F.2d at 315 and n. 6. The court further observed, in n. 6, that failure to inform that a criminal investigation was being made did not amount to misconduct requiring exclusion of evidence.

The *ESM Gov't Sec.* case also is significant here in that the court there acknowledged that enforcement of administrative subpoenas is a matter for district courts under their supervisory power, rather than under the exclusionary rule. *Id.* at 317. The court said, at 317:

> * * * We do not hold, however, that any violation of the fourth amendment in the procurement of an administrative subpoena compels denial of its enforcement.
>
> Consequently, the court should not invoke an automatic exclusionary rule. "The correct approach for determining whether to enforce a summons requires that the court evaluate the seriousness of the violation under all the circumstances, including the degree of harm imposed by the unlawful conduct." *United States v. Bank of Moulton,* 614 F.2d 1063, 1066 (5th Cir.1980). Each case must be examined on its facts.

In this instance, there is no substantial basis for believing any improper conduct has occurred. There is no reason to believe that anyone engage in any fraud, deceit or trickery which would preclude enforcement of the subpoena. Finally, no justification has been shown for permitting discovery by respondent.

Absent sufficient reason to withhold enforcement, this proceeding should not "become a means for thwarting the expeditious discharge of the agency's responsibilities." *National Labor Relations Board v. Interstate Dress Carriers, Inc.,* 610 F.2d 99, 112 (3rd Cir.1979). Indeed, respondent has not shown that, if a hearing were granted, it could submit any evidence to warrant withholding enforcement. This should be, and will be, a summary proceeding.

It is

ORDERED that respondent's request to quash the subpoena and deny an order of enforcement is denied. It is further

ORDERED that respondent's alternative request for discovery, a hearing after discovery, and a stay of proceedings also is denied. It is further

ORDERED that respondent's requests for sanctions and for a protective order also are denied. It is further

ORDERED that the relief sought by petitioner in its petition, filed October 2, 1989, is granted. It is further

ORDERED that the respondent shall produce within 45 days all documents described in the subpoena *duces tecum* before a duly designated representative of the Inspector General at a date, time and place to be established by agreement of the parties. It is further

ORDERED that, if the parties are unable to agree by December 20, 1989, on a mutually convenient date, time and place, petitioner party shall notify the court forthwith in writing so the court may establish such date, time and place.